IN THE UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF IOWA

| UNITED STATES, | No. CR 20-1034 |
| Plaintiff, | |
| vs. | BRIEF IN SUPPORT OF MOTION TO DIMISS |
| CORY FRITZLER, | |
| Defendant. | |

Defendant, through counsel, submits the following brief in support of his motion to dismiss Count 1 of the one count Indictment. The Defendant, Mr. Fritzler, is charged in that count with violating the Lacy Act, 16 U.S.C. § 3372(a)(2)(A). The Lacy Act offense is predicated on the commission of a violation of Iowa law.

The Indictment charges that Defendant, on or about the month of November, 2015, engaged in conduct that involved (1) the sale and purchase of wildlife (2) with a market value in excess of $350.00 (3) knowing that the wildlife, which was a single deer, was taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of the State of Iowa.

Defendant asserts that, based on a detailed recounting of the investigation that is contained in affidavits prepared by an DNR (Department of Natural Resources) officer in connection with search warrants, Count 1 should be dismissed. This is because the hunt of the deer was initiated, induced, and undertaken by two fish and wildlife officers in conjunction with the Iowa Department of Natural Resources officers. Specifically, Officers Regiser (from the US Fish and Wildlife Service) and Wilson (from the Florida Fish and Wildlife Service) acted in an undercover capacity after initiating contact with the Defendant. Wilson induced the hunt by offering to pay the Defendant nearly $8,000.00. Most important perhaps, it was one of the officers who shot the deer during

1

the covert operation. Because the Government officer shot the deer in the course of his official duties after the officers initiated, induced, and undertook to kill a deer, then the taking, possession and transportation of the deer in question did not violate the laws and regulations of the State of Iowa. Accordingly, the federal charges, which depend on commission of a violation the laws of the State of Iowa, must be dismissed.

In support of his motion, Defendant cites *United States v. Sanford*, 547 F.2d 1085 (9th Cir. 1986). In that case, the government agents initiated the illegal hunt and killed the wildlife. The question was raised in that case as to whether under Montana law they were authorized to do so. *See Sanford*, 547 F.2d at 1090, n.9. Sanford noted that the Montana Fish and Game Commission was vested with responsibility of supervising fish and wildlife within the State. The broad responsibilities given to the Commission include the power to enforce the game laws of the state, R.C.M. § 26-104(2), fix general and special seasons and bag limits, R.C.M. § 26-104.3, and establish game refuges, R.C.M. § 26-104.8. Most importantly, the Commission "possesses all powers necessary to fulfill the duties prescribed by law." R.C.M. § 26-104(1). The Court therefore found that, although the Commission has not been granted express authority to create special exceptions for law enforcement purposes, the broad powers enumerated above strongly suggest that it may authorize limited off-season shootings by government officials if essential to the performance of a legitimate law enforcement function.

*Sanford* is on point. As in *Sanford*, in the case at bar the DNR agents initiated the hunt for deer, induced it and personally killed the wildlife. This occurred while the Government officers were engaged in their official duties in conjunction with the Iowa DNR. Under Iowa law, Iowa DNR officers, and by extension, their agents, were authorized to undertake to kill the deer in question. While there is no statute that specifically authorizes killing wildlife during covert operations, the DNR has the primary responsibility for state parks and forests, protecting the environment, and managing fish, wildlife, and land and water resources in this state. Iowa Code § 455A.2.

The Director of the DNR is statutorily authorized to plan, direct, coordinate, and execute the functions vested in the department. All powers and duties vested in the director may be delegated by the director to an employee of the department, but the director retains the responsibility for an employee's acts within the scope of the delegation. Iowa Code § 455A.4 General powers and duties of the director. The powers and duties extend to prohibit certain acts, including regulating how wildlife is harvested, to wit:

> 481A.38 Prohibited acts - restrictions on the taking of wildlife - special licenses.
>
> It is unlawful for a person to take, pursue, kill, trap or ensnare, buy, sell, possess, transport, or attempt to so take, pursue, kill, trap or ensnare, buy, sell, possess, or transport any game, protected nongame animals, fur-bearing animals or fur or skin of such animals, mussels, frogs, spawn or fish or any part thereof, except upon the terms, conditions, limitations, and restrictions set forth herein, and administrative rules necessary to carry out the purposes set out in section 481A.39, or as provided by the Code.

Moreover, the State of Iowa has an important natural resource interest in its deer and other wildlife population. In fact, the legislature has established that the State has ownership and title to its resources. Iowa Code § 481A.2 states: "The title and ownership of all fish . . . and of all wild game, animals, and birds . . . and all other wildlife, found in the state, whether game or nongame, native or migratory . . . are hereby declared to be in the state . . . ." This power of a state to exercise dominion and control over its wildlife has been established by this nation's highest court, in *Geer v. Connecticut*, 161 U.S. 519, 529 (1895). The Court quoted the following with approval:

> We take it to be the correct doctrine in this country, that the ownership of wild animals, so far as they are capable of ownership, is in the state, not as a proprietor but in its sovereign capacity as the representative and for the benefit of all its people in common.

Here the Government officers did more than provide the Defendant an opportunity to commit a crime; they undertook a covert operation, the key part of which was killing a deer. Mr. Fritzler provided them land on which to hunt, but if it was not

3

illegal for the Government officers to shoot the deer, then it was not illegal for him to allow them on his land to conduct a hunt. This is akin to the rule that a person is not guilty of conspiring with a police officer to sell drugs, for instance, while the officer is engaged in official duties, because it is not illegal for the police to engage in otherwise illegal conduct. *See Crutcher-Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012) (A government entity cannot conspire with itself).

A factually similar case is *Greene v. United States*, 454 F.2d 783, 783 (9th Cir. 1971). In *Greene* the court held that while the entrapment defense was not available to defendants, the facts in the case revealed circumstances that, in combination, required reversal of the convictions. Among other things, the court considered the substantial and extended involvement of an undercover agent in the bootlegging activities, the fact that the agent applied pressure to defendants to prod them into the production of bootleg, and the fact that the agent was the only customer of the illegal operation he helped to create.

Accordingly, for the reasons set forth herein, Defendant requests that the charge filed against him be dismissed.

As noted in Defendant's motion to dismiss, the undisputed facts necessary to make this determination are available in the form of the DNR officer's affidavit attached to the 2016 applications for warrants to search Mr. Fritzler's properties. The motion can be heard and decided prior to trial on undisputed facts that are now available and can be made of record.

Moreover, although Mr. Fritzler is not claiming he was entrapped, his claim that the DNR officers were over-involved in the crime charged is akin to entrapment. And in the context of entrapment, the Supreme Court made it clear long ago that, "[p]roof of entrapment, at any stage of the case, requires the court to stop the prosecution, direct that the indictment be quashed, and the defendant set at liberty. If in doubt as to the facts it may submit the issue of entrapment to a jury for advice. But whatever may be the finding

4

upon such submission the power and the duty to act remain with the court and not with the jury." *Sorrells v. United States*, 287 U.S. 435, 457 (1932).

Respectfully submitted,

*/s/ Mark Meyer*

MARK C. MEYER AT0005269
425 2nd Street SE, Suite 1250
Cedar Rapids, Iowa 52401
(319) 365-7529
legalmail@markcmeyer.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**
A copy of this document was served by ☐ mail, ☐ facsimile, ☐ hand-delivery ☐ electronic filing on 1/18/2021 upon all counsel of record in this case.

*/s/ Mark Meyer*